IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JILL M. KRAMER, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
FREDERICK PETER SUENNEN,

　　　　　　PLAINTIFF,

v.

UNITED STATES OF AMERICA,

　　　　　　DEFENDANT.

File No:

Hon.

**COMPLAINT**

Plaintiff, Jill M. Kramer, as Personal Representative of the Estate of
Frederick Peter Suennen, deceased, by and through her attorneys, Petrucelli
& Petrucelli, PC., for her complaint against defendant United States of
America, states as follows:

**Nature of the Action**

1.　　　This is an action under the Federal Tort Claims Act for the
wrongful death of Frederick Peter Suennen, whose laryngeal cancer went
undiagnosed for nearly six months after he presented to a United States
Department of Veterans Affairs medical center with classic warning signs of
the disease.

2.　　　On October 19, 2023, Mr. Suennen — a seventy-year-old
man with a tobacco history — reported roughly eight months of complete
voice loss and approximately twenty pounds of unexplained weight loss.

3.      His treating nurse practitioner recognized in writing that an ear-nose-and-throat (ENT) referral was warranted, documenting a plan for an "upper GI scopy and ENT consult," but never placed the ENT consult.

4.      Instead, his symptoms were attributed to acid reflux. No one examined his larynx.

5.      When he was finally diagnosed in April 2024, the cancer had grown into and through the cartilage of his larynx and spread to a lymph node, requiring removal of his voice box and, ultimately, taking his life.

6.      Timely evaluation would, more likely than not, have caught the cancer at a far earlier and more curable stage and spared him the loss of his larynx and his life.

**Parties**

7.      Plaintiff's decedent, Frederick Peter Suennen ("Mr. Suennen"), was at all relevant times an adult resident of Wausaukee, Wisconsin, and a veteran who received primary medical care as a patient of the Oscar G. Johnson VA Medical Center in Iron Mountain, Michigan.

8.       Mr. Suennen died on August 1, 2025, at the age of seventy-two.

9.      Plaintiff Jill M. Kramer is an adult resident of Stephenson, Michigan, residing at W721 Samuel Street, Stephenson, Michigan.

10.     On November 17, 2025, she was duly appointed Personal Representative of the Estate of Frederick Peter Suennen by the Dickinson County, Michigan Probate Court, and she brings this action in that representative capacity on behalf of the Estate and its beneficiaries.

11.     Defendant is the United States of America.

12.     At all relevant times, the Oscar G. Johnson VA Medical Center ("the VA facility") was owned, operated, funded, staffed, and controlled by the United States acting through the Department of Veterans Affairs.

13.     The health care providers and VA personnel whose acts and omissions are alleged herein — including the nurse practitioner, physicians, nurses, schedulers, and other clinical and administrative personnel at the Oscar G. Johnson VA Medical Center — were at all relevant times employees of the United States acting within the course and scope of their federal employment.

14.     The United States is therefore responsible for their acts and omissions under the doctrine of respondeat superior and under the Federal Tort Claims Act.

### Jurisdiction, Exhaustion, and Venue

15.     This Court has jurisdiction under 28 U.S.C. § 1346(b)(1), which confers exclusive jurisdiction on the federal district courts over civil actions against the United States for money damages for personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of employment, under circumstances where the United States, if a private person, would be liable to the claimant under the law of the place where the act or omission occurred.

16.     Under 28 U.S.C. § 2674, the United States is liable in tort "in the same manner and to the same extent as a private individual under like circumstances."

17.     Because the negligent acts and omissions occurred at the VA facility in Iron Mountain, Michigan, the substantive tort law of the State of Michigan governs the United States' liability.

18.    Plaintiff has satisfied the administrative-claim presentment requirement of 28 U.S.C. § 2675(a).

19.    Plaintiff presented a written administrative tort claim to the Department of Veterans Affairs, together with a claim for a sum certain, arising out of the facts alleged herein. Notice of the claim was transmitted on or about November 21, 2025.

20.    The Department of Veterans Affairs has failed to make a final disposition within six months, so that this action is timely and the claim fully exhausted under § 2675(a).

21.    Venue is proper in this District under 28 U.S.C. § 1402(b) because the acts and omissions complained of occurred within this judicial district.

22.    Assignment to the Northern Division is proper because the VA facility at which the negligent acts and omissions occurred is located in Iron Mountain, Dickinson County, Michigan, which lies within the Northern Division of the Western District of Michigan.

23.    This action is governed by the Federal Rules of Civil Procedure. Michigan's medical-malpractice notice-of-intent and affidavit-of-merit requirements do not apply as prerequisites to commencing this FTCA action in federal court.

## Factual Allegations

24.    Frederick Suennen was a seventy-year-old veteran who relied on the Oscar G. Johnson VA Medical Center for his primary medical care.

25.    On October 19, 2023, Mr. Suennen presented to the VA facility for a primary-care visit and annual examination.

26.    He was seen by a nurse practitioner acting within the scope of her federal employment.

4

27.    At that visit, Mr. Suennen reported two prominent and concerning symptoms: (a) persistent and complete loss of his voice (aphonia) that had lasted approximately eight months; and (b) unintentional weight loss of approximately twenty pounds.

28.    Persistent hoarseness or voice loss lasting more than two to four weeks — particularly in an older patient, and especially in a patient with any tobacco history — is a recognized red-flag symptom of laryngeal cancer.

29.    When accompanied by unexplained weight loss, the concern for malignancy is heightened.

30.    The standard of care requires prompt evaluation of the larynx in such a patient, including visualization of the larynx (laryngoscopy), referral to an otolaryngologist, and/or imaging of the neck.

31.    The nurse practitioner recorded loss of voice as Mr. Suennen's first-listed problem and documented an assessment and plan that expressly referred to an "upper GI scopy and ENT consult."

32.    She thus recognized and memorialized, in the medical record, that an ENT consultation was part of the indicated plan of care.

33.    Notwithstanding her documented recognition that an ENT consult was warranted, the nurse practitioner did not place, enter, or order any ENT consult or referral.

34.    The only consults actually entered were (a) a nutrition consult and (b) a community gastroenterology consult for an upper endoscopy directed at suspected acid reflux.

35.    No referral to an otolaryngologist was made by any VA employee.

36.    No laryngoscopy was performed or ordered.

37.  No imaging of the larynx or neck was obtained or ordered.

38.  The larynx — the very site of Mr. Suennen's symptoms — was never examined.

39.  Rather than evaluate the larynx as the source of eight months of complete voice loss, the nurse practitioner attributed Mr. Suennen's symptoms to gastroesophageal reflux and prescribed a proton-pump inhibitor.

40.  This reflux-anchored explanation did not account for, and was inconsistent with, the duration and completeness of his aphonia and his accompanying weight loss.

41.  The nutrition appointment was not completed and the consult lapsed.

42.  No effective system or follow-up was in place to ensure that the documented need for ENT evaluation was carried out, or to revisit the plan when the reflux workup did not resolve the symptoms.

43.  On November 20, 2023, Mr. Suennen underwent the community upper endoscopy at Bellin Health.

44.  The procedure was benign; it did not examine or visualize the larynx; and the gastroenterologist recommended ENT follow-up for the persistent hoarseness.

45.  The endoscopy thus both failed to explain Mr. Suennen's symptoms and expressly reinforced the need for ENT evaluation.

46.  The VA facility nonetheless did not obtain, review, or act upon that recommendation, and no ENT referral followed.

47. Mr. Suennen continued to be seen within the VA system during the ensuing months, including at urgent-care visits in or about February and March 2024, for continuing and worsening symptoms.

48. At no point during this period did any VA provider examine his larynx, refer him to an otolaryngologist, or order imaging of his neck.

49. On April 8, 2024 — nearly six months after the October 19, 2023 presentation — Mr. Suennen presented acutely with difficulty swallowing and worsening voice changes.

50. A CT scan of the neck performed at the VA facility revealed a large transglottic laryngeal mass that had invaded the thyroid, arytenoid, and cricoid cartilage, with probable vocal-cord paralysis.

51. The VA facility referred and transferred him for urgent care to HSHS St. Vincent Hospital in Green Bay, Wisconsin.

52. At St. Vincent Hospital, Mr. Suennen underwent an emergency tracheostomy and, on April 12, 2024, a total laryngectomy with modified radical neck dissection — the surgical removal of his entire voice box.

53. Surgical pathology confirmed squamous cell carcinoma of the larynx, approximately 3.9 centimeters, with invasion of laryngeal cartilage, perineural invasion, and one regional lymph node positive for metastatic carcinoma with extranodal extension.

54. The cancer was staged pT4a pN2, Stage IVA.

55. Because the cancer had invaded the cartilage of the larynx by the time it was diagnosed, larynx-preserving treatment was no longer an option, and total laryngectomy was required. Mr. Suennen permanently lost his natural voice.

56.     Following surgery, Mr. Suennen underwent adjuvant concurrent chemoradiation.

57.     A staging CT in April 2024 had shown no distant metastatic disease.

58.     A PET/CT on October 15, 2024 then demonstrated new metastatic disease in both lungs.

59.     His cancer progressed through multiple subsequent lines of systemic therapy.

60.     Mr. Suennen suffered treatment-related complications including a radiation-related esophageal stricture and a pharyngocutaneous (tracheal) fistula, requiring endoscopic interventions and a feeding tube.

61.     Mr. Suennen endured extended pain, disfigurement, loss of speech, and diminished quality of life, and he ultimately died of metastatic laryngeal cancer on August 1, 2025.

62.     On or about July 23–24, 2024, the VA facility conducted a formal Institutional Disclosure of Adverse Event with Mr. Suennen and his family, at which the facility acknowledged the adverse event and apologized for the delay in treatment of the laryngeal mass.

63.     Had Mr. Suennen's laryngeal cancer been timely evaluated and diagnosed at or reasonably following the October 19, 2023 presentation, it would, more likely than not, have been detected at a substantially earlier stage — before it invaded the laryngeal cartilage and before regional nodal spread with extranodal extension.

64.     At that earlier stage, Mr. Suennen would, more likely than not, have been a candidate for larynx-preserving treatment, would have retained his natural voice, and would have had a materially higher probability of cure and long-term survival.

65.     The delay from October 2023 to April 2024 permitted the cancer to advance across critical thresholds, deprived him of larynx-preserving options, substantially reduced his probability of survival, and was a direct and proximate cause of his injuries, his loss of his larynx and voice, and his death.

## Count I
### Medical Negligence — Negligent Care
### and Diagnosis by the Nurse Practitioner

66.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

67.     A provider-patient relationship existed between Mr. Suennen and the VA facility's health care providers, including the nurse practitioner who evaluated him on October 19, 2023.

68.     That nurse practitioner, and the other VA providers involved in his care, owed Mr. Suennen a duty to possess and exercise the degree of skill, knowledge, care, and diligence ordinarily possessed and exercised by reasonably competent providers of the same or similar profession and specialty under the same or similar circumstances.

69.     The nurse practitioner breached the applicable standard of care in her evaluation, workup, and management of Mr. Suennen, in one or more of the following particulars:

(a)     failing to obtain and appreciate an adequate history of Mr. Suennen's presenting symptoms, including the eight-month duration and completeness of his voice loss and his associated unexplained weight loss;

(b)     failing to recognize that persistent voice loss of such duration, accompanied by unintentional weight loss in an older patient with a tobacco history, is a

9

recognized warning sign of laryngeal cancer requiring prompt evaluation of the larynx;

(c)    failing to formulate an adequate differential diagnosis that included laryngeal malignancy, and instead prematurely anchoring on gastroesophageal reflux as the explanation for symptoms that reflux did not adequately account for;

(d)    failing to visualize or examine the larynx, and failing to perform or arrange for laryngoscopy, when the larynx was the site of the presenting symptoms;

(e)    failing to refer Mr. Suennen to an otolaryngologist (ENT) for evaluation of his laryngeal symptoms;

(f)    documenting that an ENT consult was part of the plan of care, yet failing to place, enter, or order that ENT consult — thereby failing to carry out the very evaluation she had identified as necessary;

(g)    failing to order imaging of the larynx or neck, such as CT imaging, that would have identified or prompted diagnosis of the laryngeal mass;

(h)    prescribing a proton-pump inhibitor for presumed reflux in lieu of, rather than in addition to and pending, an appropriate evaluation of the larynx;

(i)    failing to establish or communicate an adequate follow-up and safety-net plan — including specific return precautions and a defined interval for reassessment — to ensure the persistent symptoms were re-evaluated if they did not resolve;

(j)      failing to follow up on the status and completion of the consults and referrals that were indicated, including the ENT evaluation and the lapsed nutrition consult; and

(k)      failing to reassess her working diagnosis and to pursue laryngeal evaluation when the reflux-directed workup did not resolve Mr. Suennen's symptoms;

(i)      failing to advise Mr. Suennen that his symptoms were consistent with laryngeal cancer and needed to be evaluated by an otolaryngologist.

70.      As a direct and proximate result of one or more of the foregoing breaches, the diagnosis of Mr. Suennen's laryngeal cancer was delayed for approximately six months; the cancer advanced from a stage at which it was more likely than not curable and larynx-preservable to an advanced, cartilage-invading, node-positive stage; and Mr. Suennen suffered the loss of his larynx and natural voice, extensive treatment and its complications, conscious pain and suffering, and death, together with the other damages described herein.

### Count II
### Medical / Institutional Negligence — Negligent Follow-Up, Care Coordination, and Failure to Track Referrals and Results

71.      Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

72.      The United States, through the VA facility and its providers and personnel, owed Mr. Suennen a duty to exercise reasonable care in the coordination and follow-up of his care, including a duty to maintain and follow adequate systems for placing, tracking, and completing indicated consults and referrals, and for ensuring that diagnostic recommendations and outside test results were received, reviewed, and acted upon.

73.    The United States breached that duty, by and through its providers and personnel, in one or more of the following particulars:

(a)    failing to ensure that the documented need for an ENT consult resulted in an actual, placed referral;

(b)    failing to implement or follow a reliable system to track ordered and indicated consults and referrals to completion, such that the ENT evaluation — identified in the record as necessary — was never carried out;

(c)    failing to track, follow up on, or address the lapsed nutrition consult and the unfulfilled ENT evaluation;

(d)    failing to obtain, review, and act upon the November 2023 endoscopy report and its express recommendation for ENT follow-up;

(e)    failing to maintain a reasonable closed-loop system to ensure that recommended specialist evaluation was completed, and that abnormal or unresolved findings were flagged and addressed, over the ensuing months of continued and worsening symptoms; and

(f)    failing, through successive encounters including the February and March 2024 urgent-care visits, to reconcile the persistent symptoms with the still-incomplete workup and to ensure laryngeal evaluation occurred.

74.    As a direct and proximate result of one or more of the foregoing institutional and systems failures, the diagnosis of Mr. Suennen's laryngeal cancer was delayed, the cancer advanced, and Mr. Suennen suffered the injuries, damages, and death described herein.

## Count III
## Ordinary Negligence

75.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

76.    To the extent any of the conduct alleged is determined not to constitute medical malpractice requiring expert testimony, that conduct constitutes ordinary negligence actionable without expert testimony.

77.    By October 19, 2023, the clinical decision that Mr. Suennen required an ENT consult had already been made and documented in his medical record.

78.    Once that decision was made, the act of placing, entering, or ordering the ENT consult was a ministerial task of ordinary execution that did not itself involve the exercise of professional medical judgment.

79.    Whether a documented, already-decided referral was in fact placed and carried out — or was simply never entered — is a matter within the common knowledge and experience of an ordinary layperson, and does not require expert testimony to evaluate.

80.    The United States, through its employees, owed Mr. Suennen an ordinary duty of care to carry out the steps already determined to be necessary — including placing the documented ENT consult and following through on the documented plan of care — and breached that duty by failing to do so.

81.    As a direct and proximate result of that ordinary negligence, the diagnosis of Mr. Suennen's laryngeal cancer was delayed, with the resulting injuries, damages, and death described herein.

82.    Plaintiff pleads this count in the alternative to preserve ordinary-negligence theories to the extent the Court determines that any of the conduct alleged did not involve professional medical judgment.

## Damages

83.     As a direct and proximate result of the negligence alleged in each of the foregoing counts, Mr. Suennen and his Estate sustained damages recoverable under Michigan law, including under Michigan's wrongful-death act, MCL 600.2922, and applicable survival principles. Those damages include, without limitation:

(a)     Mr. Suennen's conscious pain and suffering, physical and mental, endured from the time of the negligent delay through his death;

(b)     fright, shock, mental anguish, and emotional distress;

(c)     disfigurement and the permanent loss of his larynx and natural voice;

(d)     loss of the enjoyment of life;

(e)     the reasonable and necessary expenses of medical, surgical, hospital, and related care and treatment;

(f)     loss of financial support, earnings, and household services;

(g)     reasonable funeral and burial expenses; and

(h)     the loss of society, companionship, comfort, and consortium sustained by those persons entitled to recover under MCL 600.2922.

## Prayer for Relief

WHEREFORE, Plaintiff, Jill M. Kramer, as Personal Representative of the Estate of Frederick Peter Suennen, respectfully requests that this Court:

14

A.    Enter judgment in favor of Plaintiff and against Defendant United States of America on each Count;

B.    Award damages in an amount that is fair, just, and reasonable, within this Court's jurisdiction and consistent with the sum certain stated in Plaintiff's administrative claim, to compensate for the injuries, damages, and death alleged herein;

C.    Award the costs of this action and interest as allowed by law; and

D.    Grant such other and further relief as the Court deems just and equitable.

Dated: July 1, 2026

**Petrucelli & Petrucelli, P.C.**
Attorneys for Plaintiff

By**:/s/Vincent R. Petrucelli**
Vincent R. Petrucelli (P30055)
328 W. Genesee St., P.O. Box AA
Iron River, Michigan 49935
Telephone: (906) 265-6173

15